Case number 18-2374. Counselor Steyer, you have reserved three minutes of your time for rebuttal, correct? Yes, Your Honor, and it's pronounced Steyer. Steyer, thank you. Let me begin. May it please the Court, I intend to focus this morning on two issues. First, the indefiniteness of claims that recite the position of a projected image in relation to a given claim. And second, the requirements of actual notice under Section 287A. A reversal on these two issues would lift the permanent injunction against Rolling Optics' current products and remove all but $15,000 of the damages even trebled. Do we have to reverse on both of those issues in order to affect the permanent injunction, or would reversal on just one of the issues be sufficient? A reversal on the first of the issues regarding a given claim would lift the permanent injunction. I propose to leave the other issues to our briefs unless the Court has questions. So beginning with indefiniteness. In Column 3 of the specification, it describes images. This is at Appendix 343. Which volume? We have four volumes. The first volume. But it's also in the appendix to our brief. What was that citation again? 343, Column 3, beginning at around line 30 or so. It describes images that appear to move up or down, quote, as the material is rotated through a given angle. Now, we all understand that statement. It has an ordinary meaning.  And similarly, the claim phrase, a given plane, has an ordinary meaning. It's readily apparent to a lay judge. And under the circumstances, Phillips tells us that claim construction in such cases involves little more than the application of widely accepted meaning of commonly understood words. The problem here is that as claim language, a given plane is used as a reference. So the words are understandable, but the scope of the claim is unclear. And that renders it indefinite, certainly. The district court, as I understand it, looked at this and said, you have to read a given claim in light of the specification. And when you look at the specification, it's the plane of the system. That might not be the exact words, but that's the plane that is continually referenced. And so that's the meaning that should be given to this word in the claim, in the context of the specification. So what's your response to that? Is, you know, reading it in light of the specification, why isn't the district court's interpretation correct? Several reasons, Your Honor. Four. First of all, what the court did was to parse the claim language, a given plane. And that was impermissible where the claims repeatedly use a phrase as a whole. This court has held that all of the words should be construed together in such cases. That was the first problem. The second problem is, even if that were the appropriate question to be asking, it's not true. There are, figure 27, for example, is one example showing three image planes in relation to each other, no description of the plane of the system at all. So there isn't simply one plane that we should be talking about here. Look at figure 29. Figure 29 is similar. Right. How many planes are in figure 29? Multiple. Hundreds, probably, in figure 29. All right? And they all have a relationship to each other. And there are a number of, there are many planes referenced in the patent. Many of them are image planes. One is the plane of the system. But the third problem that I want to discuss with the court's approach was it was asking the wrong question. It was asking what is the relevant reference plane. Now, that might have been an appropriate question if the claim language read the given plane. But the claim language is a given plane. It is an indefinite phrase inherently. And Phillips instructs us that we cannot revise or ignore the explicit language of the claim. A given plane is an indefinite phrase like a reference plane. So you're putting the rabbit in the hat if you're saying, well, what is the reference plane? You're starting from the conclusion. You're assuming the result because the claim language is not stated in that manner. It's stated as a given plane. And where the draftsman wanted to use the plane of the system as the appropriate reference plane in the claim language, he did that. He did that repeatedly. For example, in the 462 patent, which was filed on the very same day as the applications for the 030 and the 360 patents. Now, that also suggests to us. I'm sorry, just quickly. But that phrase is not used in either of the two patents that we have directly in front of us. The claims. The phrase. The plane of the system. The plane of the system is used, in fact, in also used in the patents that we have in front of us. The claims. In the claims, yes. So I think you just cited an example of its use in a patent not in front of us, namely the 462. It was one of the patents asserted, but it is not one of the patents in front of the court on this appeal. Can you just give me an example in the 360? Yes. Claim 42 of the 360 patent. That uses both the phrase a given plane and the plane of the system. And the district court thought that that claim, I think, supported its construction, right? It said so. It said so. Why is that wrong? It's wrong because the district court ignored the presumption, which is that if there are different terms used in the same claim, they are to be accorded different meanings unless there is some reason that they shouldn't be. But I thought the district court didn't ignore that necessarily, instead thought that in this context, in this claim, they had the same meaning. The district court brushed it aside without really explaining why the presumption did not apply here. The district court was result-oriented, and that was where it was going. But in fact, what we have here is the district court converting a phrase drafted as an indefinite phrase, a given plane, and substituting the words the claim, the plane of the system for that phrase. Now, that wasn't based on any extrinsic evidence. The district court didn't have, didn't rely on any extrinsic evidence. It ignored the extrinsic evidence that was submitted by our expert. It completely ignored the crane's expert. And it's an interesting exercise to go through their brief. And at pages 39 and 40 of the red brief, they do basically what the district court did. They took their own expert's statement of his opinion. And if you read the pages, you will see that they have substituted in brackets the word the for what appears, if you go back to pages 20578 and 20579 of the appendix, their expert says uses the word a. I mean, this is the problem here. You can't simply substitute one word for another. That's rewriting the claim. That is ignoring its plain and explicit meaning. Now, what the district court also did was to pick a claim construction that was contraindicated. It read limitations from the specification into the claim. The claim it recognized was broad as it was written. So what the district court did was say, well, we'll restrict it to the float embodiment, or we'll restrict it to the deep embodiment. But this court and the Supreme Court have said that that's impermissible. You don't, without express definition or disavowal, you do not read limitations from the specification into the claims. And whether you're the patent holder or the accused infringer, the same rules should apply. And in this case, that's what the court did in order to try to save this claim. What we have, then, is a situation where definiteness, precisely as the Supreme Court was focused on in the Nautilus case, the definiteness of a claim was sacrificed. There was an intentional choice of an ambiguous phrase. That creates a zone of uncertainty, which gives an unreasonable advantage to a patentee. And it's precisely in this kind of situation that the Supreme Court is saying, we need a check, a definiteness check, on this kind of claim drafting. How were the claims interpreted for purposes of the infringement analysis? They were interpreted to be the plain of the system? Yes, Your Honor. Now, if I may, then, unless there are other questions, I'll turn to the notice requirement. And my fundamental point is this. Can I just ask you a question? Yes, Your Honor. Triggered by your reference to the red brief 3940, putting in the word the in brackets in place of whatever, a, in place of a in the declaration of somebody or other. Did you contend below that there was more than one plain of the system? No, Your Honor. Not as the specification describes it. And this was the problem with their expert's opinion and their claim construction. They said initially the claim construction should be a plain, a given plain of the micro-optic system. And their expert said, well, theoretically, the micro-optic system can have an infinite number of planes. And so that's how we're going to interpret it. The problem was that that was directly at odds with the way the applicants used the term. When they wanted to talk about the system, they referred to it as having one plain in every claim in which they made that statement. Going back to my question before, you said that there was an unfair advantage to the patent owner in using the phrase a given plain. But if it's interpreted to mean the plain of the system and there's one plain of the system, what is the unfair advantage? The unfair advantage, Your Honor, is that that's not how the claim was written. The claim was written in such a way that if the infringer, if the accused infringer is permitted to define where the given plain is located, there's not an infringement. If the patent holder is able to define where a given plain is located, then there's always an infringement. Well, what if the court defines what it means in light of the intrinsic evidence? Then that is – I'm trying to understand where a claim has a meaning. I don't understand what the advantage is to the patent owner. And I guess you're trying to suggest that there's some wiggle room for later, that by making it purposefully broader, perhaps then a patent owner has an advantage of being able to interpret the claims in a different way later. Exactly. And to cover other – and to cover embodiments other than those that were specifically later relied on. So, embodiments outside of what's in the specification? Well, embodiments other than the specific float and deep embodiments that they're now saying the claim is limited to. So, they have this levitate embodiment, for example, Your Honor. But if I may, very briefly then, to turn to the – You really want to sum up because you've almost used up all your rebuttal time, which is good. I mean, it's okay. I'm going to give you back your rebuttal time, but it'd be good if you concluded here soon. And I'll give you back your three minutes to rebuttal. Thank you, Your Honor. The notice issue revolves around the Amstead case, where you have a very similar set of circumstances. And as in the Gart case, the court contrasted the facts there to a mere invitation to determine for itself where there was – which is what we faced in this instance. And I'll address the rest of it.  Thank you, Your Honor. Good morning, and may it please the Court. Mark Fleming together with Jason Liss on behalf of Crane. I would start with Judge Stoll's first question, which I think crystallizes the issue perfectly, which is that definiteness is assessed not by looking at the claim language in isolation, but with due regard for the specification and the understanding of a skilled artisan. And when the view is broadened, as Nautilus and this Court's case law suggests it should be, it's clear what the given claims cover. There's no evidence on the other side, and certainly not clear and convincing evidence. Counselor, what about Figure 29 on Appendix 337? And here's a concern that I have. When reference is made to a given claim in the specification, it does so – it seems that there's a number of different types of claims. And I can show you some other ones, but starting with Figure 29, how many claims are in that system? Well, there's a single claim of the system, which is the one between float and deep, that dotted line there. And then above it and below it, the ones that are circular, those are the planes where images can be seen. Some are above, and they're called float image planes, and some are below, and they're called deep image planes. But the reference plane, the one above which and below which the images appear, is always the plane of the system, which is the one – I guess it's 738. And the corresponding language, which is Column 32 of the patent on 357, always refers to the float synthetic image space and the deep synthetic image space as separated by the plane – I guess it's 740. But what about images that don't just – don't appear to float or that are deep? What about the images that move? What's a given plane there? So the images that move are not covered by the given plane claims. They are covered by other claims that recite images that appear to move. But those aren't subject to this particular issue because they don't recite a given plane. The given plane is used in this case for purposes of identifying the ones that are either above or below. Can you help me understand the use of the indefinite Article A instead of the – is it Dr. Barbastathis in the pages of the declaration that we were discussing earlier? Absolutely. He seemed to think that there was more than one plane of the system. Yes. And, of course, a plane is a mathematical abstraction. It has no dimension. And so it is theoretically possible that if you had a surface in real life that has a dimension, you could fit any number of infinite planes within it. But practically speaking, for purposes of this issue, the plane of the system is 50 microns thick. There's no question that a skilled artisan would understand a plane of the system and the plane of the system are functionally identical. Why didn't the expert then say in context it's clear that there is just one plane of the system for the purposes for which this testimony is offered, which is the above a given plane being used as a reference for what is above or not above? I mean, practically, that is what he was saying, and we clarified that on summary judgment. But, you know, it's true. He could have said that. But ultimately, it doesn't matter because no matter what plane of the system you're talking about, whether it's within when it's within the 50 micron thick layer, it's evident whether something is going to be above that or below that for purposes of this patent. So it doesn't affect the indefiniteness issue at all. A skilled artisan is always going to know whether an image is appearing above or below the plane of the system. That's the purpose of this patent is to explain how to achieve those effects by altering the stereoscopic scale ratio between the array of the lenses and the array of the icons. That's why, and to Mr. Steer's suggestion that the district court didn't rely on any extrinsic evidence. On the contrary, on page 12, it specifically looks at Rolling Optics' own materials, which talk about images appearing above or below. And they don't say above or below what because they don't need to. Everyone in this industry understands that we're talking about putting images above or below the plane of the system. And there's no, I don't think, any dispute that that finding of fact deserves deference on appeal. In your view, there is neither linguistic nor physical indefiniteness as the law review article talked about? No, not when the claim is, as the law review article also talks about, viewed in the context of the specification and the entire record, including the findings of fact that the district court made based on the extrinsic record. And let's also be clear in response to a point that Mr. Steer made. The expert declaration from Mr. Gale was struck at Markman as untimely. That decision has not been appealed. And then when we got to summary judgment, Rolling Optics did not rely on that declaration at all. So what we have now is a finding by the district court on page 10 of the appendix that Rolling Optics submitted no expert testimony on this issue whatsoever. And that's not been appealed. The district court certainly was not required to trawl through the record and find a declaration that Rolling Optics did not even rely on at summary judgment. And if more were needed, again, Dr. Barbastathis testifies that skilled artisans know that above the given plane refers to the plane of the system, which is why they will often just say that the images float. They don't have to say they float above what. They don't have to say they float below what. Because everybody understands it's the plane of the system. Other patent applications that we cite have done likewise. And to the extent more were needed, though we don't think it is, we have the Phillips canon that the claims need to be construed to preserve their validity because the patent office wouldn't have issued an invalid patent if there was a reasonable construction that made it valid. Can I ask another question about the given plane? Are there any, that you're aware of, any dependent claims or other claims that after a given plane is referred to once, later referred to it as the given plane, not since it's been referred to once, now it has antecedent basis to refer to it as the given plane? One does not come to mind that uses the given plane. In the colloquy with Mr. Steer, you referred to the one that refers to the plane of the system, which the district court also realized showed that there was antecedent basis. I can't think of one that does it in the way you said. A couple of points just in response. The notion that just because multiple different phrases were used to describe the same thing, obviously this court in Inova has said that is not unusual. It's the same thing in Blucalipso and in Bancorp. It's simply a case where the patentee used different phrases to express similar concepts. So that's not unusual. This is not a situation of reading in limitations from embodiments. This court said in Eidos that it's determining how a skilled artisan would understand the limitation is different from rewriting or reading in a limitation. Here we have a limitation, a given plane, and the specification gives meaning to it and a skilled artisan would look to that. There wasn't much discussion of the notification issue. Let me just say the jury was correctly instructed on this. There's no dispute as to the jury instructions. The finding that the April 2010 letter gave sufficient notification of infringement is a factual finding under this court's decision in Maxwell. There's ample substantial evidence for it, and the notion that someone receiving that letter would not know that there was an accusation of infringement by the very products that were mentioned in that letter is something that the jury was asked to decide. Rolling Optics made its arguments. When you say by the products mentioned in the letter, you're talking about the descriptive language of products that perform certain functions? The products for sale that produce three-dimensional images that appear to exist on a plane other than the surface of the film. That's right. And I don't think there's any dispute that Rolling Optics was making at least one such product, not that many as I understand it, and whether or not that was sufficient to put them on objective notice that if they imported those products to the United States, they would infringe. That was a jury question, and the jury answered it. I would, with the court's permission, briefly speak to the cross-appeal, which has to do with the district judge's order denying attorney's fees in this case, and I think this is one legal error that the court should correct in this case. The district court, although I recognize it articulated the correct standard under Octane Fitness, this is a case like Adjusticam where the court mentioned the right standard but didn't assess it properly. And I think this is an area where the district courts could benefit from further guidance because unlike in the non-patent world or in the pre-Octane world where fees are generally limited to sanctionable conduct, now all that's needed, as the court knows, is unreasonable conduct, and that's especially important here given Rolling Optics' especially weak position on the merits, which is something that the trial judge in his post-judgment order did not assess. So we would say that as in Adjusticam or as in Rothschild, this is a case where at the very least a remand is needed so that the court can apply the proper standard. So we'd respectfully submit that that aspect of the judgment should be vacated and remanded. As to everything else, the judgment should be affirmed. Unless the court has questions at this time, I'd reserve the balance of my time to address any issues on rebuttal on the cross-appeal if I may. I have a question for you. Yes, ma'am. So the language you're concerned about in particular, if I understand, in the court's rather lengthy order with regard to attorney fees is on appendix page 52. Is that right? That's right, Your Honor. Yes, that's right. Where it says RO did not engage in sanctionable conduct or bad faith litigation. But there's a lot of other statements made, right? There's a lot of other statements made here, but, you know, where they raise numerous arguments because they have great importance. You know, there's a lot of additional discussion. How do I get over the fact that there's a lot of other additional discussion that sounds quite reasonable? And I don't read that one sentence in the context of the rest of this discussion to mean that that was relied on as being the sole basis. It was just something that was noted. So it isn't exclusively that sentence, Your Honor. The sentence before, at the end of the paragraph, that's summarizing the analysis of the behavior of rolling optics during the trial says, these motions and efforts were not baseless or without legitimate purpose, which is the old Brooks Furniture standard that it has to be objectively baseless or the Rule 11 standard that you get sanctioned if you do something without legitimate purpose. Then there's the sentence, Your Honor, read. And then after that, it says the arguments it pursued were not frivolous. And once again, that's the standard that the Supreme Court in Octane said is too stringent under Section 285 because that's the common law standard. If you press an argument that's frivolous, you get sanctioned even without the statute. The statute directs the district court to analyze litigation conduct, not simply for misconduct or sanctionable behavior, but also for conduct that will stand out even if it is not sanctionable, and to do so together with an analysis of the exceptionally weak merits, patent merits arguments that were raised throughout this case, which is not something that appears in this opinion at all. In looking at the totality of the circumstances, would you suggest that a court can't consider these factors as part of the totality of circumstances? Well, no. Obviously, they should be considered, but they shouldn't be all that's considered. And they should be considered against the correct legal standard, which is just something that we don't have here. There isn't a statement that this behavior, while not sanctionable, is also not something that rises to the level that the Supreme Court mentioned in Octane. And there is no evaluation anywhere, and certainly Rolling Optics hasn't pointed to any, of the strength or weakness of Rolling Optics' position on the patent merits, which was striking in this case. After Markman, there was basically no non-infringement argument left. It was all decided on summary judgment. The Rolling Optics forced a trial that was completely unnecessary. None of the trial issues except for the brief mention of actual notice this morning has even been appealed. The invalidity case is gone except for indefiniteness, which was decided on summary judgment. That is not considered at all in this opinion. So we would suggest that the court respectfully should vacate and remand so that Judge Sorokin can consider that under the correct standard. Thank you. I'll be brief, Your Honor. With regard to the difference between a given plane and the plane of the system, the specification, when it refers to the plane of the system, uses different words, sometimes talks about it as the material, sometimes talks about it as other things, but it always uses the word the. And if you look at the red brief on page 33, when they reproduce all the different ways that there is a reference to the plane of the system, they omit the word the. Now, the focus here is on can you simply rewrite this claim to remove the indefinite phrase when the claim language itself is clear? And that was the problem here. The court has said repeatedly that district courts are not to rewrite claims, whether to save them from invalidity or for any other reason. Now, with regard to notice, briefly, like the Amstead case, there was no dispute about the contents of the letter. It was a legal issue. It was decided after J.M.O.L. against the accused infringer. So we have the same situation essentially here. We have letters that are not in dispute. Did the question of actual notice go to the jury? Yes, it did. And on J.M.O.L. it was denied. So that's how it came to the court. There was the mention of the word infringement, but no direct charge of infringement. There was no request for abatement in that case. And unlike Gart, what we had here was a mere invitation to determine for ourselves whether there was infringement. That's not a charge of infringement. That doesn't satisfy the notice requirement, which this court has held requires a specific charge of infringement by a particular product. Unless there are any further questions. No, sir. Thank you. Conclude. Thank you, Your Honor. You have three minutes. Mr. Steer did not mention attorney's fees, so I don't think I have anything to rebut. But if the court has any questions, I'm happy to address them. Okay. We thank you, sir. Thank you, Your Honor. I appreciate the court's time.